(No. 3997—

CLARENCE J. FANNIN, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1947.*

BAKER, LESEMANN, KAGY & WAGNER, for claimant.

GEORGE F. BARRETT, Attorney General and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

BERGSTROM, J.

Complaint was filed on November 12, 1946, wherein claimant alleges that he was injured on December 4, 1945 in the performance of his duties while in the employ of respondent, and seeks to recover for the permanent loss of the sight of his right eye.

The record consists of the Complaint, Departmental Report, Stipulation, Claimant's Brief, and Respondent's Waiver of Brief.

The evidence shows that on December 4, 1945, about 6:00 P. M. claimant was called from his home to investigate an automobile collision which had occurred in front of his house. The driver of one of the cars, a woman, became abusive to the point that it was necessary to prevent her from operating her car. Claimant, who was a highway police officer employed by respondent, placed her under arrest. She refused to accompany him, and in the scuffle that ensued, she stuck her thumb into the officer's right eye.

Previous to this occurrence and during the week of September 3, 1945 claimant had developed an irritation of his right eye which was described as a "cold in the eye" or an "acute inflammation in the right eye." He consulted various doctors, and immediately prior to the injury of December 4, 1945 his eye was responding to treatment prescribed by Dr. G. F. Schwartz of St. Louis, Missouri. Following this latter injury, claimant's eye grew progressively worse, and on December 17, 1945 he requested the Division of State Police to furnish specialized treatment.

On December 27, 1945 claimant was sent to St. Louis, Missouri for an examination and such treatment as should be prescribed by Dr. Lawrence T. Post, Professor and Head of the Department of Clinical Opthalmology, Washington University, School of Medicine. He examined claimant on that day and reported that the right eye showed a hazy rough cornea with many deposits on the endothelium, pupil slightly and irregularly dilated and fixed by posterior adhesions to the anterior lens capsule over which was gray fibrinous exudate. There was red reflex, but no fundus details were seen. The tension was 34 (Schiotz). The left eye appeared normal externally and opthalmoscopically. It was his opinion that the patient had a glaucoma in the right eye secondary to a uveitis. From the history he judged that the uveitis was present before the injury from the thumb, but, since there was history of lost vision at the time immediately after this injury, he was of the belief that it undoubtedly was a contributory factor in the present serious condition of the eye.

Dr. Post treated claimant and made various reports of the patient's progress, including one dated April 5, 1946, which reads as follows:

"Replying to your letter of April 3rd, I saw Mr. Fannin yesterday and made the following observation:

"Vision in the right eye, 20/200; tension 11 (normal); pupil, bound; moderate lens opacity. I believe that this is about the maximum vision that he will attain, and I doubt if even this will be held indefinitely. I advised that he might go back to work whenever he desired."

On July 19, 1946 Dr. Post sent in his final report, wherein he stated:

"First examination by me on December 27, 1945, showed vision hand motions at 6 inches right eye and 20/20 vision left eye. With a plus 1.00 sphere add, he read 3½ point with the left eye. There was a uveitis present in the right eye and the intraocular tension was 34, which indicates that the eye was too hard. I thought that the inflammation was the cause of the glaucoma and that this had either been induced or increased by the blow on the eye. I treated him for many months with a variety of drugs and procedures. Tension became normal and vision slowly improved to a maximum of 20/200. From then on it began to fail because of a secondary cataract in this eye, and when last seen June 21st, vision was 4/200 and the eye quiet. I believe that the vision will fail further as the cataract becomes more mature, but I do not advise the removal as the chance of obtaining good vision even with operation after such an attack of uveitis is almost nothing."

There is also a report from Dr. Howard G. Knapp of East St. Louis, Illinois, which is included in the record by stipulation, dated February 11, 1947, in which he states:

"Today I examined Mr. Fannin's eye. He states that on December 5, 1945 his right eye was injured while he was on duty with the State Highway Patrol.

The uninjured left eye is normal in every respect. Vision is 20/20. There is no evidence of any sympathetic reaction.

The injured right eye deviates outward a varying degree, up to thirty degrees. Lids are normal. The cornea is clear. The anterior chamber is shallow. The iris is atrophic and bound down to the lens by many adhesions. There is almost complete absorption of the pigment layer of the iris. The pupil is filled by a white organized exudate in which iris pigment is incarcerated. There is an opacity of the lens. The fundus is not visible. Vision is finger count (uncertain) at one foot. Light perception is faulty. This represents a one hundred per cent loss of visual acuity in the right eye.

I do not believe there is any danger to the left eye."

Inasmuch as respondent received notice of the accident on the day after it happened and the other jurisdic-

tional requirements have been satisfied, claimant is entitled to the benefits under the Workmen's Compensation Act. The evidence also shows that the accident arose out of and during the course of claimant's employment by respondent, and as a result thereof, claimant has a permanent loss of the sight of his right eye, aggravated by and fairly attributable to the accident.

Claimant's total earnings from respondent for the year preceding his injury on December 4, 1945, were $2,363.61. His compensation rate would, therefore, be $15.00 per week, increased by 20% to $18.00 per week, the accident having occurred after July 1945. Claimant filed an affidavit that he was unemployed from December 4, 1945, the date of the accident, until September 6, 1946 when he was employed by the Payne and Dolan Construction Company. Dr. Post advised claimant on April 4, 1946 that he might go back to work whenever he desired. From the record, claimant is entitled to receive compensation for total temporary incapacity from December 5, 1945 to April 5, 1946, a period of 17 1/7 weeks at $18.00 per week, or $308.57. He is also entitled to receive the additional sum of $2,160.00 for the loss of the sight of his right eye, computed on the basis of 120 weeks at $18.00 per week. From these amounts must be deducted the sum of $745.50 paid to claimant for unproductive time, which leaves the balance he should be paid $1,723.07.

Respondent paid the sum of $142.00 to Dr. Lawrence T. Post, St. Louis, Missouri for medical services, and also paid claimant $244.87 for travel and expenses from his home to St. Louis, Missouri for medical treatment.

An award is therefore entered in favor of claimant, Clarence J. Fannin, in the sum of $1,723.07, payable as follows:

$ 604.50 which has accrued and is payable forthwith;
$1,118.57 payable in 62 weekly installments of $18.00 commencing May 21, 1947, and a final payment of $2.57.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."